```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                    DALLAS DIVISION
```

UNITED STATES OF AMERICA,       §
                                §
                    Plaintiff,  §
                                § Civil Action No. 3:10-CV-0582-D
VS.                             §
                                §
ARTHUR PINER GRIDER, III,       §
et al.,                         §
                                §
                    Defendants. §

MEMORANDUM OPINION

Plaintiff United States of America (the "government") moves for a preliminary injunction requiring defendant Arthur Piner Grider, III ("Grider") and several corporate entities under Grider's ownership and control ("the Corporate Defendants") to comply with federal tax laws and to provide notice of the injunction. For the reasons that follow,[1] the court grants the motion except as to the notice requirement and enters a preliminary injunction by separate order filed today.[2]

---

[1] Pursuant to Fed. R. Civ. P. 52(a)(2), the court sets out its findings of fact and conclusions of law in this memorandum opinion.

[2] The court is deciding the government's preliminary injunction motion on the papers, without conducting an evidentiary hearing, as permitted by Rule 43(c). *See, e.g.*, *Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006). The parties agree that this motion can be decided on the papers without oral testimony.

I

Grider owns and operates the Corporate Defendants as employee leasing companies.[3] The government alleges that Grider is personally liable for more than $25 million in unpaid trust fund recovery penalty taxes, and that the Corporate Defendants collectively owe more than $76 million in payroll and unemployment taxes unpaid over the past 10 years. The government estimates that the Corporate Defendants' unpaid federal income and Federal Insurance Contributions Act ("FICA") taxes continue to accumulate at a rate of $1 million per quarter, and that their unpaid Federal Unemployment Tax Act ("FUTA") taxes continue to accumulate at a rate of $250,000 per year.

The government has introduced extensive records of unpaid

---

[3] The government alleges that Grider owns and controls the Corporate Defendants in the following capacities: (1) Secretary, Chief Financial Officer ("CFO"), Director, and Treasurer of Asgard Avionics Corp. of New York, the managing member of Asgard Technologies, LLC; (2) President, CFO, and Secretary of Asgard Avionics Corp. of Florida; (3) President of Asgard International, Inc., the managing member of Asgard Resources, LLC, Flagship Promotional Services, LLC, and Phoenix Offshore Services, LLC, and the sole member of Asgard Resources of Texas, LLC; (4) Director, President, Secretary, and Treasurer of Phoenix Services, Inc.; (5) President of PSG Services, Inc.; (6) Chief Executive Officer of Resource Management International, Inc., d/b/a The RMI Group, Inc.; and (7) Director, President, Secretary, and Treasurer of RMI Pendragon, Inc. The government alleges that Grider owns and controls Talent Force Technical, LLC and Talent Force Services, LLC, which have purportedly assumed service contracts from other companies that Grider operates, because these entities share a common business address with Grider's other entities. According to the government, signs on the building at this address once displayed the "Asgard" name and now read "Talent Force."

federal trust fund recovery penalties assessed against Grider dating back to at least 2001. Internal Revenue Service ("IRS") Revenue Officer James Ashton ("Ashton") avers that the IRS has no record of employment tax returns, unemployment tax returns, and partnership tax returns filed on behalf of the Corporate Defendants for significant periods during each year since 2002. On several occasions between 2007 and 2009, the government has issued summonses for information and payment from Grider and the Corporate Defendants. Although Grider and the Corporate Defendants have submitted some of the requested information and payments, they have not fully complied with these summonses.

The government alleges that, instead of submitting tax forms and payments in compliance with federal tax laws, Grider has used withheld wages to fund his personal expenses. Moreover, the government avers that Grider has shut down corporate entities indebted to the IRS to avoid debt payments, and that he has then continued to operate the same businesses under different names. The government posits, for example, that when it tried to levy on some of the Corporate Defendants' accounts receivable, Grider renamed these entities as the "Talent Force" defendants.

The government moves for a preliminary injunction requiring that Grider and the Corporate Defendants (1) withhold and deposit with the IRS payroll and unemployment taxes and tax forms as required by law; (2) provide Ashton with proof of such compliance;

(3) pay tax liabilities before satisfying the claims of other creditors; (4) refrain from transferring money or property to other entities to pay the wages of defendants' employees; and (5) notify the IRS of any new business started within five years of the preliminary injunction. The government also requests that the preliminary injunction require that Grider give notice of the preliminary injunction to his employees and to vendors by posting a copy at www.asgardcompanies.com and the common address of the Corporate Defendants, and by notifying all employees who worked for the Corporate Defendants after January 1, 2009.

Defendants do not generally challenge the issuance of an injunction. They do dispute, however, the requested scope. Defendants maintain that the preliminary injunction should not require that Grider notify employees of the injunction or post notice of the injunction on the Corporate Defendants' website and at a common address. Defendants do not object to the other terms of the proposed injunction. As they state in their joint response:

> Over the span of the last 60 days, counsel for Grider has made at least seven (7) attempts to reach an agreeable form of preliminary injunction. After repeated efforts, the area of dispute is quite limited. The only difference between the form proposed by the United States, and the form agreeable to Grider, is the punitive notice provisions in Paragraphs D and E of the Government's proposed order. These provisions are calculated to put Grider's companies out of business.

Ds. Resp. 2.

II

In general, to obtain a preliminary injunction, the party seeking that relief must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to it outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Jones v. Bush,* 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). Although the decision to grant a preliminary injunction is within the discretion of the court, it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden of persuasion on all four requirements. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192, 196 (5th Cir. 2003); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 157 (5th Cir. 1982). In this case, an injunction is explicitly authorized by 26 U.S.C. § 7402(a), which provides for equitable remedies, including injunctive relief, "in

addition to and not exclusive of any and all other remedies" to enforce tax laws at the instance of the government.

III

A

"Section 7402(a) of the Internal Revenue Code authorizes courts to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws. While the Court need not consider the traditional equity factors when issuing a statutory injunction, it is worth noting that those factors are met here." *United States v. Fisher*, 2004 WL 489822, at *8 (N.D. Tex. 2004) (Fish, J.). The government maintains that the court need not balance the hardships when determining the scope of the injunction to issue. Indeed, "[w]here, as here, an injunction is expressly authorized by statute, 'the traditional equity guidelines for injunctive relief, both preliminary and permanent, may be somewhat modified.'" *United States v. Bailey*, 789 F. Supp. 788, 812 (N.D. Tex. 1992) (Means, J.) (quoting *United States v. Buttorf*, 761 F.2d 1056, 1063 (5th Cir. 1985)). The court is free, however, to consider the equities when granting an injunction. *See, e.g., United States v. Buttorf*, 563 F. Supp. 450, 454 (N.D. Tex. 1983) (Hill, J.) (stating that "the legislative process has already taken these [common law] factors into consideration" in its decision to authorize injunctions by statute, but also "find[ing] that each factor is specifically satisfied under the facts of this case."),

*aff'd,* 761 F.2d 1056 (5th Cir. 1985). *See also Fisher*, 2004 WL 489822, at *8.

B

1

The government has clearly carried its burden of showing a substantial likelihood of success on the merits of its underlying tax claim. It has introduced extensive records supporting the claim that Grider and the Corporate Defendants have failed to comply with federal tax laws. Grider admits "that there is significant tax liability that needs to be resolved." Ds. Resp. 11. Although the parties dispute *the extent* of Grider's and the Corporate Defendants' tax liability, the court need not resolve this question to find that the government has clearly carried its burden of showing that it is substantially likely to succeed on the merits of its claims to the extent necessary to warrant injunctive relief.

2

The government has also demonstrated a substantial threat that it will suffer irreparable injury absent a preliminary injunction. In this case, "[i]rreparable injury should be presumed from the very fact that the statute has been violated." *United States ex rel. Mitchell v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969). Because the government has established a substantial likelihood of success on the merits of its claim that

Grider and the Corporate Defendants have violated federal tax laws, the court presumes the existence of irreparable injury.

3

The balance between the harm to the government if Grider and the Corporate Defendants are not enjoined and the harm to defendants if they are enjoined weighs generally in favor of the government. Ashton avers that the government will continue to lose more than $1 million per quarter in tax revenue if Grider and the Corporate Defendants continue their current practices. The ongoing harm to the government is at least sufficient to enjoin Grider from violating federal tax laws in the future.

Grider responds that granting the government's request for mandatory notice would cause great harm to defendants because posting such a notice would devastate his businesses. The government maintains that the harm to Grider is immaterial because the court need not consider the balance of hardships when issuing an injunction explicitly authorized by statute.

The court can consider the equities when issuing an injunction. *See Buttorf*, 563 F. Supp. at 454. The court finds that the notice the government seeks would cause defendants significant additional hardship, most likely resulting in the loss of clients and revenue. On the other hand, the benefit to the government from such notice does not warrant exacting such injuries.

The government argues in reply that

> Grider's employees have the right to be made aware of what has been happening with their withheld payroll tax. If Grider's employees, creditors, and vendors know of his obligations via notification of the injunction, it is more likely that Grider will comply, than if everyone believes it is business as usual.

P. Reply Br. 3. It also contends that such notice "may help to encourage compliance, since third parties may be able to monitor future non-compliance." *Id.* at 10. The fact of the preliminary injunction and of the pendency of this lawsuit is, of course, public knowledge. And nothing precludes the government from providing notice of the preliminary injunction to anyone, or prevents anyone from learning of the injunction by searching publicly-available court records. But requiring that defendants provide targeted notice is qualitatively different: it is somewhat akin to a mandate that defendants *warn* the recipients about defendants' past conduct. And this type of quasi-warning could result in significant losses to defendants, despite their concessions that they must resolve significant tax liability, their expressed willingness to comply with federal tax laws, and the fact that defendants are now enjoined from engaging in the conduct on which the government relies to request that notice be required. Moreover, should Grider violate the preliminary injunction, the court is authorized to exercise its contempt power. "Upon a finding of contempt, the district court has broad discretion in

assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir.2000)); *see F.T.C. v. Trudeau*, 579 F.3d 754, 772 (7th Cir. 2009) ("[T]he district court has broad discretion to fashion an appropriate remedy in a civil contempt action." (citing *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir. 1988))). "To the extent that a contempt sanction is coercive, the court has 'broad discretion to design a remedy that will bring about compliance.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir.1982)). Were defendants to violate the preliminary injunction, the court could fashion a contempt remedy that serves the purposes for requiring notice (perhaps imposing the notice requirement that the government now requests). This prospect provides defendants a strong incentive to live up to the requirements of the preliminary injunction. And if such a remedy were later imposed, the attendant losses to defendants would fall fully on their shoulders; the losses would not flow from the terms of a preliminary injunction that failed to properly balance the hardships involved in requiring such notice.

Accordingly, the court holds that an injunction that requires that Grider and the Corporate Defendants comply with the federal

tax laws, but not that they provide the requested notice that an injunction has been entered, best balances the hardships.

4

The issuance of a preliminary injunction will not disserve the public interest. "There is a 'broad public interest in maintaining a sound tax system'" and defendants' failure to pay employment and other taxes causes harm by "divest[ing] funding from other government objectives." *United States v. Sifuentes*, 2005 WL 3627339, at *6 (W.D. Tex. Nov. 28, 2005) (quoting *United States v. Lee*, 455 U.S. 252, 253 (1982)). Grider argues that an injunction including notice requirements will actually disserve the public interest because it will cause his companies to lose business partners and revenue, harming the local economies and resulting in job losses where the Defendant Corporations are located. The court finds that both the public interest in collecting tax revenue from Grider and the Corporate Defendants and the public interest in preserving jobs can be served by an injunction requiring compliance with federal tax laws but not requiring that defendants provide notice of the preliminary injunction.

* * *

For the reasons explained, the court grants the government's motion for a preliminary injunction except as to the requested notice requirement. A preliminary injunction will be filed today.[4]

November 2, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[4]Defendants' October 22, 2010 motion and October 25, 2010 amended motion for leave to file a surreply are denied.